**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| DAVID JAROSLAWICZ, |
| Plaintiff, |
| -against- |
| ADAM AMITAI, |
| Defendant. |

Civil Action No.: 1:26-cv-5160

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................................................... 1

II.   ALLEGATIONS AND BACKGROUND .............................................................. 1

III.  LEGAL ARGUMENT............................................................................................ 3

   a.  **This Action Must be Dismissed, Because the SAFE Agreement Calls for Exclusive Jurisdiction in Israel.** .................................................................................... 3

   b.  **Count I Must be Dismissed Because Defendant is not a Party to the SAFE Agreement.**................................................................................................... 7

   c.  **Count II Must be Dismissed Because Plaintiff Fails to Plead with Requisite Specificity.** ..................................................................................................... 9

   d.  **Count III Must be Dismissed Because GBL 349 is not Applicable to Securities Transactions.**.................................................................................................. 12

IV.   CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ainbinder v. Kelleher*,
  No. 92 Civ. 7315, 1997 WL 420279 (S.D.N.Y. July 1997) ...................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 9

*AT&T Corp. v. Voice Stream Network, Inc.*,
  No. 15-cv-8155, 2017 U.S. Dist. LEXIS 15714 (S.D.N.Y. Feb. 2, 2017) .............................. 12

*Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist of Tex.*,
  571 U.S. 49 (2013) .............................................................................................................. 5, 6

*ATS I Commc'ns*,
  493 F.3d .................................................................................................................................. 10

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
  234 F. Supp. 3d 526 (S.D.N.Y. 2017) .................................................................................... 12

*Beacon v. Terminal Corp. v. Chemprene, Inc.*,
  429 N.Y.S.2d 715 (NY App. 2d Dept. 1980) ........................................................................... 7

*Beck v. Manufacturers Hanover Trust Co.*,
  820 F.2d 46 (2d Cir. 1987) ..................................................................................................... 11

*Becker v. Faber*,
  19 N.E.2d 997 (NY 1939) ......................................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007) ............................................................................................................ 9, 10

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ..................................................................................................... 4

*Blakey v. McMurray*,
  110 A.D.2d 998 (NY App. 3d Div. 1992) ................................................................................. 7

*Clayton v. Katz*,
  2012 WL 4378035, 2012 U.S. Dist. LEXIS 137671, (Sept. 25, 2012) ................................... 12

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ....................................................................................................... 4

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
  27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...................................................................................... 12

*Dixon v. van Blanckensee*,
  994 F.3d 95 (2d Cir. 2021) ..................................................................................................... 9

*Eaves v. Designs for Fin., Inc.*,
  785 F. Supp. 2d 229 (S.D.N.Y. 2011) .................................................................................. 12

*Feesha v. TD Waterhouse Inv. Servs.*,
  305 A.D.2d 268 (NY 1st Dep. 2003) ..................................................................................... 13

*Forgione v. Gaglio*,
  2015 WL 718270, 2015 U.S. Dist. LEXIS 21644 (S.D.N.Y. Feb. 13, 2015) ......................... 12

*Fung-Schwartz, MD v. Cerner Corp.*,
  2018 WL 4386087, 2018 U.S. Dist. LEXIS 156646 (S.D.N.Y. Sept. 13, 2018) ..................... 12

*GlaxoSmithKline LLC v. Laclede, Inc.*,
  2019 WL 293329 (S.D.N.Y. Jan. 23, 2019) ............................................................................. 4

*Gray v. Seaboard Sec., Inc.*,
  14 AD.3d 852 (NY 3d Dept. 2005) ....................................................................................... 13

*Herrera v. Comme des Garcons, Ltd.*,
  84 F.4th 110 (2d Cir.2023) ................................................................................................... 10

*In re Terrorist Attacks on Sept. 11,
  2001*, 714 F.3d 659 (2d Cir. 2013) ......................................................................................... 4

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir. 1993) ..................................................................................................... 11

*INV Accelerator, LLC v. MX Techs., Inc.*,
  2020 WL 882902 (S.D.N.Y. Feb. 24, 2020) .......................................................................... 13

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
  No. 07 Civ. 432 (LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008) ........................................ 7

*Jones Real Estate, Inc. v. Avatel Techs., Inc.*,
  2019 WL 1130154, 2019 U.S. Dist. LEXIS 39693 (S.D.N.Y. Mar. 12, 2019) ....................... 12

*Jones v. Weibrecht*,
  901 F.2d 17 (2d Cir. 1990) ..................................................................................................... 5

*Lynch v. City of N.Y.*,
  952 F.3d 67 (2d Cir. 2020) ....................................................................................... 10

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ...................................................................................................... 5

Quaknine v. MacFarlane,
  897 F.2d 75 (2d Cir. 1990) ....................................................................................... 10

Magi XXI,
  714 F.3d........................................................................................................................ 5

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) ................................................................................... 5, 6

*Med. Soc'y v. Oxford Health Plans, Inc.*,
  15 A.D.3d 206 (N.Y. App. Div. 2005) ..................................................................... 13

*Mencher v. Weiss*,
  114 N.E.2d 177 (NY 1953) ......................................................................................... 8

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ....................................................................................... 9

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ......................................................................................... 4

*Phillips*,
  494 F.3d......................................................................................................................... 6

*Porina v. Marward Shipping Co.*,,
  521 F.3d 122 (2d Cir. 2008) ....................................................................................... 4

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
  No. 16 Civ. 3787 (DAB), 2017 WL 2304302 (S.D.N.Y. May 18, 2017) .................................. 7

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ..................................................................................... 10

*Sheth v. New York Life Ins. Co.*,
  273 A.D.2d 72, 709 N.Y.S.2d 74 (N.Y. App. Div. 2000) .................................... 12, 13

*Sonera Holding B.V. v. Cukurova Holdings A.S.*,
  750 F.3d 221 (2d Cir. 2014) ....................................................................................... 4

v

*Stutman v. Chemical Bank,*
  *95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)*.......................................... 12

*Sullivan v. Jersey Strong Licensing LLC,*
  No 18-CV7753 (RA), 2019 WL 3066492 (S.D.N.Y. July 12, 2019)......................................... 4

*Wexner v. First Manhattan Co.,*
  902 F.2d 169 (2d Cir. 1990) ...................................................................................... 10

*Wiederman v. Spark Energy, Inc.,*
  No. 19 cv. 4564 (PSG), 2020 WL 1862319 (S.D.N.Y. Apr. 14, 2020)................................. 7, 8

*Zeppelin Sys. USA, Inc. v. Pyrolx USA Indiana, LLC,*
  2020 WL 1082774 (S.D.N.Y. Mar. 5, 2020)......................................................................... 6, 5

Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................. 9, 10, 12

Fed. R. Civ. P. 9(b) ...................................................................................................... 10

**COMES NOW** Defendant, Adam Amitai, by and through his undersigned counsel of record, and submits this Memorandum in Support of his Motion to Dismiss Plaintiff's claims. Plaintiff seeks dismissal of Plaintiff's three claims on the following grounds. *First*, the subject investment agreement provides for exclusive jurisdiction in Israel. *Second,* should the Court evaluate Plaintiff's claims: (i) Plaintiff's breach of contract claim fails as a matter of law because Defendant was not a party to the investment agreement; (ii) Plaintiff's common-law fraud claim fails, because Defendant has not pled with the requisite specificity; and (iii) Plaintiff's GBL 349 claim fails as a matter of law because the subject investment was not a consumer transaction.

## I.       INTRODUCTION

Plaintiff alleges that he invested $250,000 in an Israeli company. The company was not successful. Rather than pursuing claims against the company, Plaintiff instead seeks to hold the founder/CEO personally liable for: (i) breach of contract (Count I), (ii) common law fraud (Count II), and (iii) New York's consumer protection statute (Count III, GBL 349). There are several fundamental issues with Plaintiff's claims. *First*, jurisdiction is not appropriate here. The subject agreement that Plaintiff was presented for his execution provides for exclusive jurisdiction in Isreal. *Second*, even if jurisdiction was appropriate in New York, Plaintiff's contract was with the company, not Defendant. Plaintiff may not pursue a breach of contract claim against a non-party. *Third*, Plaintiff has not pled fraud with the requisite specificity. *Fourth*, the subject transaction was an investment, not a consumer transaction that may fall under the GBL 349. And, even if the subject investment was covered under GBL 349, Plaintiff fails to plead his claim with the requisite specificity. For these reasons and those elaborated herein, Defendants respectfully request that the Court enter an order dismissing Plaintiff's claims and this Action.

## II.      ALLEGATIONS AND BACKGROUND

1

1.      On May 26, 2026, Plaintiff, David Jaroslawicz ("Plaintiff"), filed a Summons and Complaint (the "Complaint") against Defendant, Adam Amitai, in the Supreme Court of New York, New York County (Index No. 653130/2026, the "State Action"). *See* (ECF 1).

2.      On June 22, 2026, Defendant removed the State Action to this Court. *See* (ECF 1).

3.      The State Action concerns a $250,000 investment that Plaintiff allegedly made in a company (Lavaa Ltd.) that allegedly was associated with Defendant. *See* (Ex. A at ¶¶14-15). The subject investment was a Simple Agreement for Future Equity ("SAFE"), which, in general terms, is an agreement whereby Plaintiff provided funds in exchange for the right to receive equity should a Qualified Equity Financing occur before a date certain. *See* (*id.*).[1]

4.      A copy of the SAFE agreement is attached as Exhibit F to the Complaint. *See* (ECF 1 at Ex. F). The SAFE agreement was between Plaintiff and Lavaa Ltd. *See* (*id*. at p. 1). Defendant did not guarantee the agreement and signed it solely in his capacity as the CEO of Lavaa Ltd. *See* (*id*. at p. 8).

5.      The SAFE agreement states on its face as follows:

> THIS INSTRUMENT AND ANY SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE ISRAELI SECURITIES LAW 5728 – 1968, AS AMENDED (THE "**SECURITIES LAW**"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES.  THESE SECURITIES MAY NOT BE OFFERED, SOLD, OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE SECURITIES LAW AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.

(ECF 1 at Ex. F, p. 1) (emphasis in original).

---

[1] While not pertinent to this motion, Lavaa Ltd. operated for four years as a venture-capital backed entity that raised millions of dollars, including additional investment rounds following Plaintiff's initial contribution.

6.      By and through the SAFE agreement, Plaintiff represented that he was an accredited investor as such term is defined in Rule 501 Regulation D of the United States Securities Act of 1933.  *See* (ECF 1 at Ex. F, p. 5).

7.      The SAFE agreement that was provided by Lavaa Ltd. to Plaintiff contains the following provision:

> All rights and obligations hereunder will be exclusively governed by and construed in accordance with laws of the State of Israel, without regard to its conflicts of law provisions.  The competent courts in Tel Aviv-Jaffa district shall have exclusive jurisdiction over any dispute or claim arising in connection with or as a result of this instrument, and each of the parties hereto irrevocably submits to the exclusive jurisdiction of such courts, to the exclusion of any other court.

(ECF 1 at Ex. F, p. 7).

8.      Unbeknownst to Defendant, after receiving the subject SAFE agreement that is attached as Exhibit E to Plaintiff's Complaint, Plaintiff drew lines over the subject paragraph and initialed.  Defendant did not likewise initial this change:

> (h) All rights and obligations hereunder will be exclusively governed by and construed in accordance with the laws of the State of Israel, without regard to its conflicts of law provisions. The competent courts in Tel Aviv-Jaffa district shall have exclusive jurisdiction over any dispute or claim arising in connection with or as a result of this instrument, and each of the parties hereto irrevocably submits to the exclusive jurisdiction of such courts, to the exclusion of the jurisdiction of any other court.

(ECF 1 at Ex. F, p. 7).

9.      Plaintiff alleges that he lost his investment and now seeks recovery.  Plaintiff asserts three counts against Defendant: (i) breach of contract, (ii) common law fraud, and (iii) Section 349 of the NY GBL *See* (Ex. A).   In Plaintiff's ten-page Complaint, he alleges that, after making the subject investment,

## III.    LEGAL ARGUMENT

### a.  This Action Must be Dismissed, Because the SAFE Agreement Calls for Exclusive Jurisdiction in Israel.

3

Defendant seeks dismissal of this Action pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction.

On a 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). On a 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiff[ ], resolving all doubts in [its] favor," *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), and must accept the allegations in the Complaint as true "to the extent they are uncontroverted" by defendants' affidavits, "which the district court may also consider." *GlaxoSmithKline LLC v. Laclede, Inc*. No. 18-CV-4925 (JMF), 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019). The **Court** need not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted). Thus, "[t]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'" *Sullivan v. Jersey Strong Licensing LLC,* No 18-CV7753 (RA), 2019 WL 3066492, at *2 (S.D.N.Y. July 12, 2019) (alterations and citations omitted).

Personal jurisdiction is analyzed under a two-step inquiry. First, the Court must determine whether the exercise of personal jurisdiction is proper under the laws of the forum state—here, New York. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). If so, the Court must then determine "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holdings A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). "In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state, here, ... New York's long-arm statute, ... so

4

long as the district court's exercise of jurisdiction comports with the requirements of due process." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

The SAFE agreement provides for exclusive jurisdiction in Isreal "over any dispute or claim arising in connection with or as a result of this instrument." (ECF 1 at Ex. F p. 7). It cannot credibly be argued that the allegations in this Action do not fall within the aforementioned language. Court in this circuit uniformly enforce such forum selection provisions where, as here, the forum has a logical nexus to the subject agreement.

Enforcement of these forum selection clauses is governed by federal law. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014) ("Questions of … the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature, and therefore should be governed by federal law.") (*quoting Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (per curiam)) (internal quotation marks omitted).

Supreme Court has explained, "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," and should therefore be "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist of Tex.*, 571 U.S. 49, 63 (2013) ((internal quotation marks and citations omitted). This is especially so where the forum selection clause is the result of an arms-length transaction. See *Magi XXI*, 714 F.3d at 721 ("We give substantial deference to the forum selected by the parties, particularly where the choice was made in an arm's length negotiation by experienced and sophisticated businessman.") (internal quotation marks and citations omitted); Zeppelin Sys., 2020 WL 1082274, at *3, at *3 ("[C]ourts should do no 'more than give effect to the legitimate expectations of the parties,

5

manifested in their freely negotiated agreement.'") (*quoting M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972))

To determine whether a forum selection clause is valid and enforceable, courts consider: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., … whether the parties are required to bring any [] dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Martinez*, 740 F.3d at 217 (*quoting Phillips*, 494 F.3d at 383) (internal quotation marks omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable," and "[a] party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (*quoting Phillips*, 494 F.3d at 383-84); see also *Zeppelin Sys. USA, Inc. v. Pyrolx USA Indiana, LLC*, No. 19-cv-11222, 2020 WL 1082774, at *3 (S.D.N.Y. Mar. 5, 2020) (applying this four-part framework on a 12(b)(2) motion to dismiss).

Here, all of the relevant factors are satisfied. The provision was the product of an arms-length agreement between a corporate start-up and an accredited investor. Plaintiff clearly was aware of the provision, as he drew a line through it and initialed to the side of the language. There are no allegations of fraud, and given that the underlying company is an Israeli company, it is not overreaching. Finally, the provision provides for mandatory (not permissive) jurisdiction in Israel for any and all claims connected to the SAFE agreement. And, by agreeing to the subject forum selection provision, Plaintiff waived any right to contest it is inconvenient or less convenient for him and any witnesses. *Atl. Marine,* 572 U.S. at 64 ("When parties agree to a forum-selection

6

clause, they waive the right the challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, of for their pursuit of the litigation.").

Plaintiff may argue that the forum selection provision is not applicable, because he scribbled a line through it and then initialed next to the revision. Such Argument would be futile. Defendant did not likewise initial or otherwise accept such revision (or even see the change until receiving the Complaint). *See* (ECF 1 at Ex. F, p. 7). As such, the attempted modification has no legal effect. It is black-letter law that a contract cannot be modified or altered without the consent of all the parties thereto. *Becker v. Faber*, 19 N.E.2d 997 (NY 1939), *rehearing denied*, 21 N.E2d 216 (1939). Where there is an absence of mutual assent to a proposed modification the original terms of the contract remain in effect. *Beacon v. Terminal Corp. v. Chemprene, Inc*., 429 N.Y.S.2d 715 (NY App. 2d Dept. 1980); *see also Blakey v. McMurray*, 110 A.D.2d 998, 488 (NY App. 3d Div. 1992) ("Plaintiffs never initialed the changes on the agreement to indicate their acceptance. Under these circumstances, the writings in question failed to create a binding contract and Supreme Court's award of summary judgment in favor of defendants must be upheld.").

**b. Count I Must be Dismissed Because Defendant is not a Party to the SAFE Agreement.**

Defendant is not a party to the SAFE agreement, and Plaintiff has not alleged that Defendant made any guaranty of any obligations in the SAFE agreement. *See* (ECF 1 at Ex. F).

"It is black-letter law that non-parties [to a contract] ordinarily cannot be held liable for a breach of the contract." *Wiederman v. Spark Energy, Inc.,* No. 19 cv. 4564 (PSG), 2020 WL 1862319, at *5 (S.D.N.Y. Apr. 14, 2020) *(quoting Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 Civ. 3787 (DAB), 2017 WL 2304302, at *2 (S.D.N.Y. May 18, 2017); *see also Ixe Banco, S.A. v. MBNA Am. Bank, N.A*., No. 07 Civ. 432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008) (Non-parties cannot be liable for a breach of contract under New York law.").

7

And, while there are "limited exceptions to this rule,"[2] the Complaint does not plead any facts suggesting any such exception applies here. Plaintiff simply alleges that, "[o]n or about January 13, 2025, plaintiff invested $250,000 in Lavaa Ltd., a company with a similar name to Lavaa Health, a copy of the agreement signed by plaintiff and the defendant is annexed here to as Exhibit F." (ECF 1 at ¶14).

It is black-letter law that a corporate representative does not make him/herself personally liable by signing a contract as a representative of the subject corporation. Under New York law, it is well-established that an "agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Mencher v. Weiss*, 114 N.E.2d 177, 179 (NY 1953). For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and an individual capacity. *See Ainbinder*

For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity. *See Ainbinder v. Kelleher*, No. 92 Civ. 7315, 1997 WL 420279, at *13 (S.D.N.Y. July 1997). That is not the case here. See (ECF 1 at Ex. F, pg. 7).

Further, Plaintiff has failed to allege any events that would constitute a breach. The SAFE agreement provides that Plaintiff would receive securities *only if* a Qualified Equity Financing occurred. *See* (ECF 1 at Ex. F, p. 4).[3] Plaintiff fails to allege that a Qualified Equity Financing

---

[2] *Wiederman*, 2020 WL 1862319, at *5.
[3] "Qualified Equity Financing" is defined as, "a bona fide transaction or series of transactions with the principal purpose of raising capital: (i) pursuant to which the Company issues and sells Preferred Shares at a fixed valuation, including but not limited to, a pre-money valuation, and (ii) at least 25% of the amount of the capital raised is raised as part of the Equity Financing (i.e. new money) and is not attributable to any Safe investors in their capacity as such and/or an Initial Public Offering.

occurred. *See, generally*, (ECF 1). To the contrary, Plaintiff's Complaint acknowledges that the company was not successful and went out of business. *See* (ECF 1 at ¶18).

### c. Count II Must be Dismissed Because Plaintiff Fails to Plead with Requisite Specificity.

Defendant moves to dismiss Plaintiff's Count II (common-law fraud) under Rule 12(b)(6) for failure to state a claim.

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (complaint must raise "more than a sheer possibility that a defendant has acted unlawfully").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] all factual allegations in the complaint as true" and "draw[ ] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations*." Dixon v. van Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal,*556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Determining whether a plausible claim has been pled is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679;

9

*see also Herrera v. Comme des Garcons, Ltd*., 84 F.4th 110, 113 (2d Cir.2023).  However, "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of the complaint's factual allegations.  *Twombly*, 550 U.S. at 556 (citation omitted). The court's task "is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).

Where, as here, fraud is asserted, the Court must also view the complaint under Rule 9(b), which requires the complaint to state "the circumstances constituting fraud … be stated with particularity."  Fed.R.Civ.P. 9(b).   "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *Id.* (*citing Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).  In order to satisfy Rule 9(b), Plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170 (internal citations omitted). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATS I Commc'ns*, 493 F.3d at 99.

Rule 9(b) also requires that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Rule 9(b)'s specificity requirement for scienter "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co*., 902 F.2d 169, 172 (2d Cir. 1990).  Therefore, to serve the purposes of Rule 9(b), courts require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent. *See Quaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990).

The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts

that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268-69 (2d Cir. 1993), *cert. denied*, --- U.S. ---, 128 L.E.d2d 70 (1994); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005 (1988), overruled on other ground by *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (*en banc*).

The Complaint falls far short of the lofty pleading requirements required under Rule 9(b). Plaintiff alleges that he sent the subject funds to a different entity, but fails to allege that he was deceived into doing so or why/how that caused him any harm (or why it allegedly was nefarious. (ECF 1 at 14-16) ("To this day, plaintiff has still not received an explanation as to the relationship between Lavaa Ltd. and Lavaa Health."). Plaintiff clams that "it appears that the entire scheme was a fraudulent and coordinated by the defendant who came to the United States to raise money and then disappeared." (*Id*. at 21)[4] Plaintiff fails to allege what Defendant allegedly said, when he allegedly said it, and how/why Plaintiff allegedly relied upon such representations. Plaintiff also fails to allege any mechanics of the alleged "scheme", other than the ultra-conclusory statement that it was a fraudulent "scheme."[5] Perhaps most notably, Plaintiff fails to even plead that he relied upon any alleged misstatement, let alone that such reliance was reasonable. Plaintiff also fails to even plead intent, let alone the purpose for the alleged scheme. Put simply, the Complaint contains bare-boned, conclusory allegations of fraud. It falls far short of Rule 9(b)'s heightened standard, and Count II must be dismissed.

---

[4] While alleging that Defendant "disappeared", Plaintiff then references subsequent communications between himself and Dr. Jacobson, the President of the company. (ECF 1 at ¶24). The Complaint also contains an email from Defendant on March 16, 2026, that begins "I have been trying to reach you since Friday…" (*Id*. at Ex. H).

[5] Plaintiff claims that "[t]his is extremely audacious." (ECF 1 at 30). Start-up companies fail far more often than succeed. There is nothing audacious about the subject company not being able to succeed.

### d. Count III Must be Dismissed Because GBL 349 is not Applicable to Securities Transactions.

Defendant seeks dismissal of Count II (GBL 349) for failure to state a claim under Rule 12(b)(6). To state a claim under Section 349, "Plaintiff must adequately allege three elements: (1) the challenged act or practice was consumer-oriented; (2) the act or practice was misleading in a material way; and (3) the plaintiff suffered injury as a result of the deceptive act." *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000)) (internal quotation marks omitted).

For purposes of § 349, consumers are defined as "those who purchase goods and services for personal, family or household use." *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000). This formulation has been adopted by numerous courts in this District. *See, e.g., Jones Real Estate, Inc. v. Avatel Techs., Inc.*, No. 18-cv-1949, 2019 WL 1130154, at *, 2019 U.S. Dist. LEXIS 39693, at *18 (S.D.N.Y. Mar. 12, 2019); *Fung-Schwartz, MD v. Cerner Corp.*, No. 17-cv-233, 2018 WL 4386087, at *, 2018 U.S. Dist. LEXIS 156646 at *16 (S.D.N.Y. Sept. 13, 2018); *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017); *AT&T Corp. v. Voice Stream Network, Inc.*, No. 15-cv-8155, 2017 U.S. Dist. LEXIS 15714, at *24 (S.D.N.Y. Feb. 2, 2017); *Forgione v. Gaglio*, No. 13-cv-9061, 2015 WL 718270, at *, 2015 U.S. Dist. LEXIS 21644, at *46 (S.D.N.Y. Feb. 13, 2015); *Clayton v. Katz*, No. 10-cv-5755, 2012 WL 4378035, at * n.12, 2012 U.S. Dist. LEXIS 137671, at *16 n.12 (Sept. 25, 2012); *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011). Though "[a] plaintiff need not be a consumer to bring a claim under § 349 ... the challenged conduct must affect consumers." *Axiom Inv. Advisors*, 234 F. Supp. 3d at 537.

12

Courts have uniformly found that GBL is not applicable to claims arising from securities transactions for two principle reasons: (1) "individual do not generally purchase securities in the same manner as traditional consumer products, such as vehicles, appliance or groceries since securities are purchased as investments, not as goods to be 'consumed or used'" and (2) "because the securities arena is one which is highly regulated by the federal government, it is questionable that the legislature intended to give securities investors an added measure of protection beyond that provide by the securities acts." *Gray v. Seaboard Sec., Inc.*, 14 AD.3d 852, 853-54 (NY 3d Dept. 2005) ("[T]he clear weight of authority is that claims arising out of securities transactions are not the type of consumer transactions for which General Business Law § 349 was intended to provide a remedy."); *Feesha v. TD Waterhouse Inv. Servs.*, 305 A.D.2d 268 (NY 1st Dep. 2003) (holding that GBL 349 was inapplicable to plaintiff's claims were TD Waterhouse allegedly liquidated his account pursuant to an agreement "to grant defendant TD Waterhouse the right to liquidate securities in plaintiff customer's account).

As such, the alleged harms to startups and entrepreneurs do not qualify as consumer-oriented because they were not incurred while "purchas[ing] goods and services for personal, family or household use."  Sheth v. N.Y. Life Ins. Co., 709 N.Y.S.2d 74 (NY 1st Dep. 2000); see also *Med. Soc'y v. Oxford Health Plans, Inc*., 15 A.D.3d 206 (N.Y. App. Div. 2005).  (dismissing GBL § 349 claim because "Defendants' acts and practices are directed at physicians, not consumers").

Courts have dismissed nearly identical GBL 349 claims. For example, in *INV Accelerator, LLC v. MX Techs., Inc.,* No. 19-CV-2276 (AJN), 2020 WL 882902, at *6–7 (S.D.N.Y. Feb. 24, 2020), the investor in a similar SAFE asserted several claims, including consumer fraud under GBL 349. The Court dismissed the claim with prejudice upon Defendant's motion to dismiss.

13

IV.    CONCLUSION

Investments are inherently speculative. Plaintiff knew he was investing in an Israeli startup that may (or may not) succeed. And, the unfortunate truth is that most start-up companies fail. That is exactly what happened here. Plaintiff is not satisfied with suing his contractual counterparty in the forum designated in the SAFE agreement. Plaintiff instead sued the company's CEO in New York.  Plaintiff's actions are improper and overreaching. Plaintiff is free to "cry over spilled milk," but he is not likewise free to pursue the Action he has filed. Defendant respectfully requests that the Court enforce the SAFE agreement's forum selection clause. And, should the Court find that jurisdiction is appropriate in New York, Defendant respectfully requests that the Court dismiss Plaintiff's claims for the reasons articulated above.

Dated:  June 25, 2026
      Kansas City, MO                              **BOCHNER PLLC**

                                        /s/ *Samuel L. Blatnick*
                                        Samuel L. Blatnick, Esq.
                                        1040 Avenue of the Americas, 15th Floor
                                        New York, New York 10018

                                        and

                                        107 w. 9th Street
                                        2d Floor
                                        Kansas City, MO 64108
                                        (646) 971-0685
                                        sblatnick@bochner.law

                                        *Attorney for Defendant*

14