UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID JAROSLAWICZ, Plaintiff, -v- ADAM AMITAI, Defendant. | 26-cv-5160 (JSR) MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

Plaintiff David Jaroslawicz's First Amended Complaint ("FAC") brings a single claim for fraudulent inducement based on his $250,000 investment in defendant Adam Amitai's health start up, Lavaa Health. See ECF No.7. Amitai moved to dismiss, see ECF No. 10, and the motion has been fully briefed. After full consideration, the Court granted the motion in a "bottom-line" order dated September 18, 2026. See ECF No. 14. This Memorandum Order sets forth the reasons for that ruling and directs the entry of final judgment.

## I. Background

### A. Factual Allegations

The factual allegations, taken most favorably to plaintiff, are as follows:

Jaroslawicz is a lawyer in New York City. FAC ¶ 6, Ex. F at 1, ECF No. 7. At an unspecified time prior to October 2024, Jaroslawicz's personal friend and physician Bernard Schayes, M.D., told Jaroslawicz about an Israeli start up, Lavaa Health. FAC at ¶¶ 8-11, ECF No. 7. Amitai was the CEO of Lavaa Health. FAC at ¶ 10,

ECF No. 7.

Lavaa Health was a health care start up "providing A.I. and related services to hospitals and medical care practitioners" with an "advanced A.I. proprietary technology." FAC at ¶¶ 62-63, ECF No. 7. Lavaa Health claimed that it "uses AI to unify data, streamline workflows, predict risk, and drive better clinical, financial, and operation outcomes across care settings." FAC Ex. B at 1, ECF No. 7. "Lavaa Health delivers real-time, AI-powered insights that help providers predict risk, close care gaps, and improve clinical and financial outcomes across the entire care team." FAC Ex. B at 5, ECF No. 7.

On October 9, 2024, Dr. Schayes emailed Amitai, an investor named Matt Jacobson, and Jaroslawicz: "Please meet David Jaroslawicz – Adam [Amitai] and Matt [Jacobson] are principles [sic.] with Lavaa." FAC Ex. D, ECF No. 7. Amitai quickly responded, "It's a pleasure to meet you . . . I would love send [sic] you the materials and have a zoom meeting to present to you how we are changing the way value based care works and improving health in general." FAC Ex. D, ECF No. 7.

On January 5, 2025, Dr. Schayes and Amitai held a meeting in New York that Jaroslawicz did not attend. FAC at ¶ 12, ECF No. 7. The following day, Amitai emailed Jaroslawicz: "I hope you're feeling better - we missed you at lunch yesterday. Bernie [Schayes] suggested I follow up to finalize our discussions about investing in Lavaa. We're offering the same exclusive terms that Matt Jacobson

invested under: a $20M cap with a 20% discount. Matt committed $500K, joined us in an active role, and is already seeing the value of being part of our rapid growth." FAC Ex. E at 1, ECF No. 7. Amitai then touted that "our last round was at $12M valuation, and this round is effectively at $16M. With our A round planned at a $40M valuation in 2025, this is an incredible opportunity to join us at a significant inflection point." Id.

On or about January 12, 2025, Jaroslawicz and Amitai spoke on the phone. FAC at ¶ 18, ECF No. 7. In a follow up email, Amitai told Jaroslawicz "I'm thrilled to have you join us on this journey. As discussed, attached you'll find the contract with the exact same terms that Matt Jacobson joined under. I've also included the US wire instructions you requested for your convenience." FAC Ex. E at 2, ECF No. 7.

The next day on January 13, 2025, Jaroslawicz responded that he had "read the papers you sent me and I've signed," but that he had crossed out an exclusive jurisdiction section. FAC Ex F at 2, ECF No. 7. On January 14, 2025, Amitai countersigned the contract as modified by Jaroslawicz and emailed a fully executed Simple Agreement for Future Equity ("SAFE") to Jaroslawicz. See FAC Ex. F at 1, ECF No. 7; FAC Ex. G, ECF No. 7. On January 15, 2025, Jaroslawicz wired $250,000 to the bank account identified in Amitai's January 12 and 13 emails. See FAC Ex. H, ECF No. 7.

Several months later, on May 12, 2025, Jaroslawicz emailed Amitai "What, if anything, is happening with Lavaa?" FAC Ex. I, ECF

No. 7. Amitai quickly responded, "Hi, what do you mean?" FAC Ex. I, ECF No. 7.

On January 29, 2026, Amitai emailed Jaroslawicz that he "had secured an allocation of shares" and to "confirm" the name under which Jaroslawicz would like the shares to be held. FAC ¶ 36, ECF No. 7. The FAC does not include an exhibit of this email.

On March 12, 2026, the law firm Duane Morris LLP emailed Jaroslawicz a DocuSign link requesting a signature for "Longview IQ Incorporation." FAC Ex. J, ECF No. 7. Jaroslawicz alleges that he did not know anything about Longview IQ Corporation. FAC ¶ 39, ECF No. 7.

On Friday March 13, 2026, Amitai allegedly emailed Jaroslawicz that Lavaa Health had not succeeded in "funding the next round." FAC ¶ 40, ECF No. 7. Jaroslawicz did not include an exhibit of this email.

On Monday March 16, 2026, Amitai emailed Jaroslawicz again. FAC Ex. K at 1, ECF No. 7. Amitai explained "I have been trying to reach you since Friday in order to speak directly and clarify the situation, but unfortunately I have not been able to reach you." Amitai attached a "formal letter outlining the company's current situation." As relevant here, Amitai stated:

> [T]he company has made extensive efforts over the past period to secure additional funding and advance commercial opportunities with large customers and investors. Unfortunately, those efforts were not successful, and the company no longer has the resources required to continue operations.

> The management team has worked diligently to pursue every reasonable opportunity to move the company forward. Despite these efforts, the company has not been able to reach a sustainable path.

FAC Ex. K at 1, ECF No. 7. The attached Company Update stated much the same, adding that:

> As of today, the company no longer has active clients, employees, or sufficient financial resources to sustain ongoing activities. In light of this situation, the company has been taking the necessary steps to wind down its operations and proceed with an orderly shutdown in accordance with applicable corporate and legal requirements. We understand that this outcome is disappointing. The company's management made significant efforts to develop the business and pursue funding opportunities; however, given the current financial condition of the company, continuing operations is not feasible.

FAC Ex. K at 1, ECF No. 7.

Following Amitai's emails to Jaroslawicz, Jaroslawicz emailed Jacobson on April 16, 2026, stating "Please see attached correspondence." FAC Ex. L, ECF No. 7. In the attached correspondence, Jaroslawicz provided the factual background of his investment discussed above and stated, "I am writing you to find out what happened to the money." FAC Ex. L at 3, ECF No. 7. Jaroslawicz suggested that he would retain counsel in Israel and was contemplating legal action because he "was defrauded and would like to get [his] money returned." Id. Jaroslawicz also stated that he emailed Amitai on March 26, 2026, id., but that email is not included in the FAC or the attached exhibits.

Attached as Exhibit E to the letter was a "Factual Company Operations Memorandum" that Amitai allegedly sent to Jaroslawicz in

March 2026. Id. Among other things, the Memorandum states that "[i]n 2021, the company completed a seed financing round of approximately $4 million at an approximately $8 million pre-money valuation. During 2024-2025, the company raised more than $1 million through SAFE financing instruments." Id. at 22.

Jacobson responded the next day on April 17, 2026. FAC Ex. M, ECF No. 7. Jacobson said:

> You and I are very much in the same position. Through family trusts I had established, I invested $480,000 in the same Lavaa SAFE round as you. I made that investment because, like you, I believed in the promise of the company. Unlike you, I also invested hundreds, perhaps thousands, of hours, unpaid, attempting to generate business for Lavaa in the United States between March 2024 and the company's shuttering earlier this year.
>
> During that time, Lavaa had a well-functioning technology platform, pilot customers, and generated a modest amount of revenue. Like many early stage companies, however, its available funds were ultimately exhausted before it could reach commercial success.
>
> Based on my prior experience, I understood that having an appropriate title was often necessary to gain access to investment decision makers at prospective customers. For that limited purpose, Lavaa agreed that I could present myself as President of its American operations. During my period of unpaid service, working to enhance the value of both my investment and yours, I used that title. However, I was never . . . an officer, director, or even an employee of Lavaa. I never visited Lavaa's offices and had no access to its financial or other books and records.
>
> Lavaa's "American sales operations," of which I was described as "President," consisted solely of my unpaid efforts and those of some short-term paid contractors to generate U.S. business and to assist with the implementation of Lavaa's technology at the limited number of pilot sites the company secured. I had no role in corporate governance, no voting rights, and no involvement in fundraising or financial management.
>
> Unlike my prior company, Lavaa was not able to secure

> sufficient financing to carry it through to viability and profitability. In my view, this was not for lack of effort. . . I have written off my $480,000 investment with regret, but with the understanding that management made tremendous efforts to achieve success.

Id. Jacobson ended the email with "PS: I understand that Lavaa will be shutting down all servers including this email, therefore any future messages will most likely bounce back to you." Id.

**B. Procedural Background**

Jaroslawicz filed a Summons and Complaint against Amitai in the Supreme Court of New York, New York County, on May 26, 2026, asserting breach of contract, common law fraud, and a claim under New York State General Business Law § 349. See ECF No. 3-1. Amitai removed the case to federal court on June 22, 2026 and filed a motion to dismiss on June 25, 2026. See ECF Nos. 3, 5. On July 2, 2026, Jaroslawicz filed the FAC, alleging a single claim for fraudulent inducement. See FAC at ¶¶ 21, 68, ECF No. 7. Amitai again moved to dismiss on July 23, 2026, briefing was completed on August 27, 2026, and this Court granted the motion by bottom-line order on September 18, 2026. See ECF Nos. 10, 12, 13, and 14.

**II. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he court must consider only those facts alleged in the complaint, and must draw all reasonable inferences in favor of

the plaintiff." Wilson v. Dynatone Publishing Company, 892 F.3d 112, 117 (2d Cir. 2018). The complaint "is also deemed to include any written instrument attached to it as an exhibit [and] materials incorporated in it by reference." L-& Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation modified).

The elements of a fraudulent inducement claim are "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (citation modified).

For claims of fraud, Federal Rule of Civil Procedure 9(b) "require[s] that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (citation modified).

**III. Analysis**

Jaroslawicz alleges that Lavaa Health was a "sham" and that he "agreed to invest $250,000" "[b]ased upon Defendant's representation of the company's alleged ongoing business with great potential, Jacobson's investment and participation, and Kesselman & Kesselman as the company's alleged auditors." FAC at ¶ 21, ECF No. 7. Therefore, to succeed on his fraudulent inducement claim, Jaroslawicz must allege with adequate specificity that at least one

of these was a material misrepresentation of a then present or past fact; that when Amitai made the statement he intended to deceive Jaroslawicz; that Jaroslawicz reasonably relied on these misrepresentations; and that those misrepresentations caused Jaroslawicz damage. See Ipcon Collections LLC, 698 F.3d at 62.

For the reasons explained below, the complaint fails to state a claim for fraudulent inducement.

**A. "The company's alleged ongoing business with great potential"**

Jaroslawicz alleges that "Defendant's representation of the company's alleged ongoing business with great potential" induced Jaroslawicz to invest in Lavaa Health. FAC at ¶ 21, ECF No. 7; see also FAC at ¶ 61, ECF No. 7 ("Defendant made false statements about the company's position and its ability to succeed."). The only relevant and specific statement that the FAC alleges Amitai made is in Amitai's January 6, 2025 email: "[1] our last round was at $12M valuation, and [2] this round is effectively at $16M. With [3] our A round planned at a $40M valuation in 2025, [4] this is an incredible opportunity to join us at a significant inflection point." FAC Ex. E at 1, ECF No. 7. None of these four representations suffices to state a plausible claim for fraudulent inducement.

**1. "Our last round was at $12M valuation"**

Jaroslawicz argues that the Factual Company Operations Memorandum Amitai sent in March 2026 demonstrates that Amitai's representation that "our last round was at $12M valuation" was

false. Opp. at 6.

Drawing all reasonable inferences, the FAC adequately alleges that the representation was false. The Memorandum stated that in 2021 Lavaa Health raised $4 million in seed money based on an $8 million pre-money valuation. FAC Ex. L at 22. Although Amitai raises plausible arguments that "$12M valuation" and "$8 million pre-money valuation in 2021" are in fact consistent, that requires drawing inferences in favor of Amitai, which is not appropriate on a motion to dismiss. See Wilson, 892 F.3d at 117 (2d Cir. 2018) (on a motion to dismiss, the court must "draw all reasonable inferences in favor of the plaintiff"). Instead, construing all facts and drawing all reasonable inferences in Jaroslawicz's favor, the "$12M valuation" representation was false because in fact the valuation was $8 million.

Nevertheless, Jaroslawicz fails to state a claim based on this misrepresentation. First, the FAC itself never alleges that Amitai's representation that Lavaa Health's "last round was at $12M valuation" was a material misrepresentation in light of the facts disclosed in the Factual Company Operations Memorandum. Jaroslawicz cannot use his Opposition to Amitai's motion to dismiss to supplement the factual allegations in the FAC.

Second, and more fundamentally, the FAC does not allege with any particularity Amitai's "intent to deceive," Ipcon Collections LLC, 698 F.3d at 62, when Amitai stated that the "last round was at $12M valuation." Although intent "may be alleged generally," F. R. Civ. P.

9(b), that "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations," Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Rather, the plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (citation modified); see also id. (plaintiff must plead "particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent") (citation modified). Here, Jaroslawicz has not pleaded any particularized facts giving rise to a strong inference that Amitai intended to deceive Jaroslawicz. Because intent to deceive is a necessary element of a fraudulent inducement claim, the FAC thus fails to state a plausible claim based on this misrepresentation.

**2. "[T]his round is effectively at $16M"**

Jaroslawicz argues that the Factual Company Operations Memorandum demonstrates that all of Amitai's valuations were false. However, Jaroslawicz identifies nothing in the Factual Company Operations Memorandum suggesting that when Jaroslawicz invested, the then-current seed round was not valued at $16 million. In fact, the SAFE attached as an exhibit to the FAC reflects that the effective valuation when Jaroslawicz invested was $16 million. FAC Ex. G at 1, ECF No. 7. Therefore, Jaroslawicz has not adequately alleged that this representation was false.

### 3. "[O]ur A round [is] planned at a $40M valuation in 2025"

Amitai's representation that Lavaa Health's "A round" funding was "planned at a $40M valuation in 2025" was a statement about a planned and hoped-for future event. To be false, Jaroslawicz must allege facts supporting the inference that Amitai in fact did not plan to seek funding Lavaa Health at a $40 million valuation. But Jaroslawicz does not do so: there are no factual allegations that Amitai was not planning to seek A round funding, or that Amitai was planning to do so but at a different valuation. See e.g. Spinelli v. Nat'l Football League, 903 F.3d 185, 210 (2d Cir. 2018) ("Although a mere promissory statement as to what will be done in the future does not constitute a material misrepresentation of fact, a promise made with a preconceived and undisclosed intention of not performing it does.") (citation modified); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise . . . does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."). The mere fact that the planned series A funding round did not occur does not mean that the representation was false when made. See e.g. Shields v. Citytrust Bancorp., 25 F.3d 1124, 1129 (2d Cir. 1994) ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud."). Therefore, Jaroslawicz has not adequately alleged that this statement was a misrepresentation.

#### 4. "[T]his is an incredible opportunity to join us at a significant inflection point"

Amitai's statements that "this is an incredible opportunity to join us" and that this is "a significant inflection point" are "too general to cause a reasonable investor to rely upon them," ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 206 (2d Cir. 2009). They are classic puffery, "optimistic statement[s] that [are] so vague, broad, and non-specific that a reasonable investor would not rely on [them], thereby rendering [them] immaterial as a matter of law." Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc., 704 F. Supp. 3d 429, 445 (S.D.N.Y. 2023) (citation modified); see also Rostami v. Open Props, Inc., No. 22-cv-3326, 2024 WL 1313713, at *3 (S.D.N.Y. Mar. 26, 2024) (statements of startup founders' "expectations and opinions" and "forward-looking statements" about what the venture would become are not "material misrepresentations of a presently existing or past fact") (citation modified). Jaroslawicz does not allege any facts suggesting otherwise.

To summarize, Jaroslawizc fails to state a claim for fraudulent inducement "[b]ased upon Defendant's representation of the company's alleged ongoing business with great potential." Based on the FAC's allegations, three of Amitai's representations were not false and thus not misrepresentations to begin with. One statement may have been a misrepresentation, but the FAC does not make the necessary allegations, and in any case, fails to adequately allege Amitai's

intent to deceive, as is necessary to state a claim for fraudulent inducement.

**B. "Jacobson's investment and participation"**

The FAC alleges that Amitai fraudulently misrepresented Jacobson's investment and participation in Lavaa Health, and that those misrepresentations induced Jaroslawicz to invest in Lavaa Health.

First, contrary to Jaroslawicz's repeated insistence, Amitai never "falsely represented Jacobson as the President" and never "held out Jacobson as a principal of the company." Opp. at 3, ECF No. 12. The only factual support Jaroslawicz provides for this allegation is an email from Dr. Schayes. See FAC Ex. D, ECF No. 7. Dr. Schayes is not Amitai, and the FAC does not allege that Amitai ever endorsed that statement or had some obligation to correct it. Therefore, Amitai did not make the alleged material misrepresentation that supposedly fraudulently induced Jaroslawicz to invest.

Second, the FAC fails to state a claim for fraudulent inducement as to the only statement Amitai is alleged to have made about Jacobson. Amitai told Jaroslawicz that "attached you'll find the contract with the exact same terms that Matt Jacobson joined under" and "Matt committed $500K, joined us in an active role, and is already seeing the value of being part of our rapid growth." FAC Ex. E, ECF No. 7.

The FAC does not allege any facts supporting the assertion that anything in that statement was "a material misrepresentation of a presently existing or past fact." Ipcon Collections LLC, 698 F.3d at 62. The FAC does not allege facts supporting that Jacobson did not commit $500,000 or did not take "an active role" in Lavaa Health. In fact, Jacobson's April 17, 2026 email explained that Jacobson invested $480,000 in cash and "invested hundreds, perhaps thousands, of hours, unpaid, attempting to generate business for Lavaa in the United States." FAC Ex. M, ECF No. 7. To the extent there is a difference between "committ[ing] $500K" and investing $480,000 in cash, the FAC does not plausibly allege it is material or that Amitai intended to deceive Jaroslawicz. Moreover, Amitai's claim that Jacobson was "already seeing the value of being part of our rapid growth," FAC Ex. E, ECF No. 7, is promotional opinion and vague optimism that is non-actionable because no "reasonable investor [would] rely upon them." ECA & Loc. 134 IBEW Joint Pension Tr. of Chi., 553 F.3d at 206.

**C. "Kesselman & Kesselman as the company's alleged auditors"**

Jaroslawicz alleges that he was fraudulently induced to invest in Lavaa Health by his impression that Kesselman & Kesselman was Lavaa Health's auditor. According to the FAC, "the reputable Israeli accounting form Kesselman & Kesselman had withdrawn as the company's auditors in June 2024." FAC at ¶58, ECF No. 7. Jaroslawicz fails to state a claim.

First, Jaroslawicz's Opposition does not respond to Amitai's

argument that the FAC fails to state a claim based on this theory, so arguably Jaroslawicz has forfeited this liability theory. Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A., 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."). Second, there is no factual allegation anywhere in the FAC that Amitai or anyone else at Lavaa Health represented to Jaroslawicz that Kesselman & Kesselman was Lavaa Health's auditor. Nor does the FAC allege that Amitai was under some legal obligation to disclose that fact. Jaroslawicz cannot state a claim for fraudulent inducement based on a representation that Amitai, the sole defendant in this case, is never alleged to have made.

Third, an exhibit attached to the FAC contradicts the FAC's allegation that Kesselman & Kesselman withdrew in June 2024. A webpage from the Israeli Corporations Authority dated April 16, 2026, attached to the FAC as an exhibit, states that "Kesselman veKesselman" is one of Lavaa Health's company officers, with "Officer Role Name: Auditor," and an "Appointment Date" of "01 Jan, 2023." FAC Ex. C, ECF No. 7. The FAC's entirely speculative and conclusory allegation that Kesselman & Kesselman withdrew as the company's auditors in June 2024 thus need not be accepted as true. Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 147 (2d Cir. 2011) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true.").

**D. Lavaa Health is a "Sham"**

Jaroslawicz argues generally that Lavaa Health was a sham. For example, the FAC alleges that, "[u]pon information and belief, the investment opportunity being touted by Defendant was a false pretense and part of an elaborate ruse by Defendant to defraud Plaintiff, whom the Defendant saw as a mark." FAC at ¶ 32, ECF No. 7. Lavaa Health was "nothing more than a sophisticated shell and a sham" that "did not have a real business" and "was all a big lie." FAC at ¶¶ 60-65, ECF No. 7.

These conclusory and speculative allegations need not be accepted as true. Hamilton v. Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) ("we are not required to credit conclusory allegations") (citation modified); Yamashita v. Scholastic Inc., 936 F.3d 98, 106 (2d Cir. 2019) (holding that "speculative, indefinite allegations" do not state a claim). Moreover, arguably these allegations are contradicted by the FAC, which alleges that Longview IQ "was using the same A.I. intellectual property that Defendant had used" for Lavaa Health. FAC ¶ 44, ECF No. 7. If Lavaa Health had "advanced A.I. proprietary technology," FAC ¶ 62, ECF no. 7, that suggests Lavaa Health was *not* "a sophisticated shell and a sham." Moreover, the HSBC bank statements attached to Jaroslawicz's Opposition show regular incoming and outgoing transactions for payroll and taxes, further suggesting that Lavaa Health was not "a big lie" and in fact had "a real business."

Jaroslawicz's allegations that Lavaa Health was a sham boil

down to the inference that, because the company failed, the company must have been a sham and Amitai's fundraising fraudulent. That is, at most, "fraud by hindsight," which does not suffice to state a claim for relief. Denny v. Barber, 576 F.2d 465, 470 (2d Cir. 1978); see also Shields, 25 F.3d at 1130 ("misguided optimism is not a cause of action, and does not support an inference of fraud"); Eternity Glob., 375 F.3d at 188-89 (the defendant's later inability to arrange a particular market does not "support an inference" that the defendant "knew or believed that no such market existed eight months earlier").

In a similar vein, the FAC's allegation that "Plaintiff suspects Defendant put the money into Defendant's personal account or pocket," FAC ¶ 67, ECF No. 7, is conclusory and speculative and thus need not be accepted as true, Hamilton, 3 F.4th at 91; Yamashita, 936 F.3d at 106. Moreover, the HSBC Bank Statements included as Exhibits to Jaroslawicz's Opposition show that Jaroslawicz's money was not moved to Amitai's personal bank account but remained in the U.S. bank account until the money was all spent. Opp. to Mtn. to Dismiss Ex. 1, ECF No. 12.

**IV. Conclusion**

For the reasons set forth above, the motion to dismiss is hereby granted without leave to further amend. "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." TechnoMarine SA v. Giftports, Inc.,

758 F.3d 493, 505 (2d Cir. 2014). Here, Jaroslawicz's opposition does not identify any "additional facts or legal theories" and thus does not "demonstrate that he would be able to amend his complaint in a manner which would survive dismissal." Id. 506. This is even more telling in view of the fact that, after defendant filed his motion to dismiss the original complaint, plaintiff filed his First Amended Complaint with full knowledge of the deficiencies raised by defendant. Therefore, the dismissal is with prejudice.

The Clerk of Court is respectfully directed to close the motion at docket number 10 and enter final judgment.

SO ORDERED.

New York, New York
10/13/2026

JED S. RAKOFF, U.S.D.J.